## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**LONGO EN-TECH PUERTO RICO, INC.,**

Plaintiff,

v.

**THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,**

Defendants.

**Civil No**. 16-3151 (DRD)

## OPINION AND ORDER

On January 3, 2017, Plaintiff Longo En-Tech Puerto Rico, Inc. ("Plaintiff" or "Longo") filed an *Amended Verified Complaint* (Docket No. 34) against Defendants United States Environmental Protection Agency ("EPA"); Regina McCarthy, as administrator of the EPA ("McCarthy"); Government Development Bank for Puerto Rico ("GDB"); Alberto Bacó-Bagué, as President of the GDB ("Bacó-Bagué"); Puerto Rico Environmental Quality Board ("EQB"); Puerto Rico Aqueduct and Sewer Authority ("PRASA"); Puerto Rico Infrastructure Financing Authority ("PRIFA"); and former Puerto Rico Governor Alejandro García-Padilla ("Garcia-Padilla"). Plaintiff seeks injunctive relief pursuant to Federal Rule of Civil Procedure 65; mandamus pursuant to 28 U.S.C. §1391; declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; and damages pursuant to *Bivens*[1] and Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. Pending before the Court is Plaintiff's Motion for *Temporary Restraining Order, Preliminary Injunction, and Mandamus* (Docket No. 4). For the reasons elucidated below, Plaintiff's motion is hereby **DENIED**.

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971)(creating a federal cause of action against federal government actors for violations of Plaintiff's constitutional rights).

## I.    FACTUAL BACKGROUND[2]

### *The CWA-SRF*

The Clean Water Act State Revolving Fund ("CWA-SRF") established a capitalization scheme for water infrastructure projects in all fifty states and Puerto Rico.   *See* 33 U.S.C. §1383. The CWA-SRF program provides funds for approved projects through the issuance of low-interest loans from state agencies to eligible loan recipients. The EPA provides a grant to the EQB, Puerto Rico's designated recipient of CWA-SRF funds, through PRIFA, EQB's designated payee. As payee, PRIFA is the agency which applies to the EPA for a cash grant, or the transfer of from the EPA's accounts into a Puerto Rico's CWA-SRF account. Puerto Rico's government must contribute an additional twenty (20) percent to the funds deposited in the account after the EPA's grants are received in the GDB.

The Puerto Rican government is responsible for the operation of the CWA-SRF program on the island. The EQB provides loans to authorized recipients, such as PRASA, in order to complete essential water infrastructure projects. As these agencies repay their loans, the repaid principal and the accrued interest are deposited back into the CWA-SRF account in Puerto Rico. This repayment structure allows these accounts to be constantly replenished and, thus, ensures the proper functioning of the program. These accounts were historically kept with Defendant GDB but are now located at Banco Popular of Puerto Rico.

### *Puerto Rico's Debt Crisis*

Puerto Rico is in the midst of a debt crisis. Accordingly, both the Puerto Rico Legislature and the United States Congress have taken steps to protect the island's government from its fiscal chaos.  On April 6, 2016, the Puerto Rico legislature passed the Puerto Rico Emergency Moratorium and Financial

---

[2] The facts recited herein were compiled from the briefs filed by Plaintiff (Docket No. 34), Defendant EPA (Docket No. 46), Defendant GDB (Docket No. 49), and Defendant PRASA (Docket No. 52), as well as published materials from the EPA's website. *See* Environmental Protection Agency, Learn About the Clean Water State Revolving Fund (2016), https://www.epa.gov/cwsrf/learn-about-clean-water-state-revolving-fund-cwsrf.

Rehabilitation Act ("the Act"), P.R. Act No. 21-2016, and former Governor, Defendant Garcia-Padilla, signed Executive Order 2016-10 ("the Executive Order"), *See* P.R. EO-2016-10. Both these documents established restrictive parameters for agencies seeking to withdraw funds from Defendant GDB's accounts. Finally, on June 30, 2016, Congress passed the Puerto Rico Oversight Management and Economic Stability Act ("PROMESA"). *See* Pub.L. 114–187. Altogether, these laws have restricted access to the funds in the CWA-SRF account.

*The Ponce Project*

On September 27, 2013 Longo de Puerto Rico, LLC contracted with Defendant PRASA ("the contract") to perform work on an infrastructure revitalization project known as the "Ponce Sanitary Trunk Sewer Rehabilitation" ("the Project"). The Project was funded under the provisions of the CWA-SRF program. On June 30, 2014, the contract was amended to assign the interests to Longo En-Tech Puerto Rico, Inc. ("Plaintiff").

On October 8, 2015, Plaintiff's books reflected that PRASA owed Plaintiff approximately $3,000,000 for works on the Project. By May, 2016, Plaintiff was owed approximately $5 million in unpaid works on the Project. However, prior to filing suit, Plaintiff persistently communicated with the defendants, attempting to recover the funds.

In September, 2016, Defendant EPA allegedly learned that Defendant GDB did not have enough liquidity to cover the balances held in the CWA-SRF accounts. This matter was purportedly referred to the Office of the Inspector General.

On October 3, 2016, Defendant EPA issued a Notice of Noncompliance ("Notice") to Defendants EQB, PRIFA and GDB. The Notice explained that the EPA had found that the Puerto Rico CWA-SRF program was not complying with the statutory requirements. Specifically, Puerto Rico's agencies were not assuring the loans' repayment and were, therefore, placing the functioning of the island's CWA-SRF program in jeopardy.

On November 2, 2016, Defendant EQB complied with the Notice's requirements and submitted a corrective action plan to Defendant EPA. However, on December 29, 2016, Defendant EPA informed Defendants EQB, PRIFA and GDB that the plan was inadequate and requested additional documentation regarding the specific, concrete steps that EQB, PRIFA and GDB had taken or were intending to take to pay all pending invoices for projects that had been authorized and approved. On December 30, 2016, Defendant McCarthy sent a letter to Defendant García-Padilla explaining, among other things, that the EPA did not intend on providing any further grant monies to Puerto Rico for the time being.

## II.      PROCEDURAL BACKGROUND

On December 21, 2016, Plaintiff filed an *Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Mandamus* (Docket No. 4). Plaintiff alleged it is owed $5,657,933.56 for works performed on the Ponce Project and approved by Defendant PRASA. Plaintiff averred that 83% of the total amount is under the control of Defendant EPA and 17% is under the control of the Puerto Rico government. Plaintiff moved for the Court to: 1) temporarily restrain and preliminary enjoin Defendants EQB, PRIFA, GDB, Garcia-Padilla, and Bacó-Bagué (collectively "State Government Defendants") from removing or withdrawing any of the CWA-SRF funds deposited in the government's Banco Popular account, including 17% of the amount owed to Plaintiff for work on the Ponce Project; 2) temporarily restrain and preliminary enjoin Defendant EPA from withdrawing funds from the EPA account in Las Vegas; 3) order that Defendant EPA deposit 83% of the money owed to Plaintiff for performance of the Ponce Project with the Clerk of the Court; 4) order that Defendant PRIFA, or any other State Government Defendant, deposit 17% of the money owed to Plaintiff for performance of the Ponce Project with the Clerk of the Court; and 5) to order both Defendant EPA and the State Government Defendants to provide the Court with a status accounting report of the monies deposited in the Las Vegas and Banco Popular accounts.

On December 27, 2016, the Court held a hearing on Plaintiff's motion. After entertaining the parties' arguments in favor and against the motion, the Court reserved its ruling and ordered Plaintiff to file

4

a memorandum of law addressing the primary factors which guide a court's analysis of a motion for a preliminary injunction. *See* Docket No. 22. The Court also ordered Plaintiff to pay particular attention on several jurisdictional issues raised by Defendants at the hearing, whether Plaintiff's suit is barred by PROMESA's automatic stay provision, and whether Plaintiff's motion is precluded by the doctrine of laches.

On January 9, 2017, Plaintiff filed its memorandum of law addressing the Court's order. *See* Docket No. 39. First, Plaintiff alleged it would suffer irreparable harm if the Court fails to act on its motion because their future bonding capacity and their ability to bid on future construction projects has been hampered by Defendants' nonpayment. Second, Plaintiff argued it stood to suffer irreparable reputational harm if not compensated forthwith for the works done in Ponce. Third, Plaintiff averred it is likely to succeed on the merits because Defendant EPA's actions in withholding the payment of CWA-SRF funds are illegal. Fourth, Plaintiff understands it has strong claims against Defendants Garcia-Padilla and McCarthy under Section 1983 and *Bivens*, respectively, as Plaintiff asseverated that the public interest is are in line with Plaintiff's motion seeking the proper compliance of government entities. Finally, Plaintiff posited it would be greatly harmed if the injunction is not ordered while Defendants would hardly be affected by the Court's granting of the motion.

On January 17, 2017, Defendants EPA and McCarthy filed their *Motion to Dismiss and Opposition to Plaintiff's Motion for Preliminary Injunction* (Docket No. 46). Defendants moved to dismiss the complaint on several grounds and vehemently opposed Plaintiff's preliminary injunction request.[3] Specifically, Defendants alleged Plaintiff had no likelihood of success on the merits, as the Court does not have jurisdiction over Plaintiff's claims against Defendants EPA and McCarthy. Defendants also noted that First Circuit case law disfavors arguments of irreparable harm which are solely based on lost revenues or monies owed. Defendants further assured the Court they would be unduly burdened if the Court were to grant Plaintiff's motion as it would be akin to making federal agencies the absolute guarantors of the

---

[3] Defendants EPA and McCarthy's *Motion to Dismiss* will be disposed of by separate order.

obligations of state agencies who make limited use of federal funds. Lastly, Defendants noted that there is a high public interest in the efficient management of federal funds by state agencies, which is the reason why the EPA has withheld further disbursements to Puerto Rico pursuant to the CWA-SRF program.

On that same date, Defendant GDB filed its opposition to Plaintiff's motion (Docket No. 49). Several state defendants joined GDB's motion.[4] Defendants prayed that the instant suit be stayed under PROMESA. In the alternative, Defendants GDB, Garcia-Padilla, and EQB averred that Plaintiff had not made a showing of probability of success on the merits. Defendants also echoed Defendants EPA and McCarthy's arguments regarding First Circuit case law addressing claims of irreparable harm solely based on monetary losses. Moreover, Defendants took exception to Plaintiff's argument that their motion was favored by the public interest as Plaintiff's request would effectively enjoin government officials from carrying out discretionary functions without judicial intervention. Finally, Defendants argued Plaintiff's motion was barred by the doctrine of laches.

On that same date, Defendant PRASA filed a separate opposition to Plaintiff's motion (Docket No. 52). PRASA averred it is merely an innocent bystander whose hands are tied because it cannot receive federal funds and, therefore, cannot pay Plaintiff. However, PRASA noted that Plaintiff has no probability of success on the merits and, therefore, its motion should be denied.

On January 27, 2017, Plaintiff filed its reply to the various defendants' oppositions to its *Motion for Preliminary Injunction* (Docket No. 66). Plaintiff devoted its reply to opposing Defendants EPA and McCarthy's *Motion to Dismiss*. Particularly, Plaintiff alleged the Court does have jurisdiction over the matter at bar and reiterated its claims against Defendant McCarthy.[5] In closing Plaintiff briefly and cursorily

---

[4] Defendants Garcia-Padilla, PRIFA, and EQB joined GDB's opposition *in toto* while Defendant PRASA only joined Defendant GDB's argument that the case was subject to PROMESA's automatic stay provision. *See* Docket Nos. 57, 61, and 62.

[5] Defendants EPA, McCarthy, and GDB responded to Plaintiff's reply. See Docket Nos. 73 and 75, respectively. However, these responses were directed at Plaintiff's arguments regarding Defendants' Motion to Dismiss and are not consequential to the Court's analysis of Plaintiff's Motion for Preliminary Injunction.

opposed the arguments set forth by the numerous defendants in their opposition to Plaintiff's motion for injunctive relief.

## III.    ANALYSIS

"To obtain a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014)(quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)); *see also Mercado-Salinas v. Bart Enterprises Int'l, Ltd.*, 671 F.3d 12, 19 (1st Cir. 2011)(the Court "must consider (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest."). "The first two factors [, likelihood of success on the merits and irreparable harm,] are the most important and, in most cases, 'irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'" *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009)(quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir.2004)). With these principles in mind, the Court discusses these factors *seriatim*.

### *Plaintiff's Likelihood of Success on the Merits*

"The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm. Wireless Services, Inc. v. SprintCom. Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (internal citations omitted). As the request for injunctive relief is directed at several defendants, the Court will discuss Plaintiff's likelihood of success on the merits of its claim against Defendants EPA and McCarthy in one section and its probability of success against the Puerto Rico state defendants in a separate section.

_**Defendants EPA and McCarthy, as Administrator of the EPA**_

Plaintiff alleges the EPA violated the Operating Agreement of the Puerto Rico CWA-SRF program by withholding funds in its Las Vegas account and not depositing them with the GDB so they could be remitted to Plaintiff. Defendant then claims a constitutional "taking" of its property by Defendant EPA for the withholding of the monies owed for performance of the Project. Additionally, Plaintiff avers Defendant EPA has breached its duties under the CWA-SRF statute. Finally, Plaintiff asserts a _Bivens_ claim against McCarthy for what it claims as _ultra vires_ acts in withholding CWA-SRF funds. _See, e.g._, Docket No. 34. Color the Court skeptical.

Without definitively ruling on the matter, it appears from the briefs submitted that the fact that Plaintiff has no contractual privity with Defendant EPA weighs heavily against Plaintiff. _See Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente Through Ins. Com'r of Puerto Rico_, 125 F.3d 9, 12 (1st Cir. 1997)("[Plaintiff] lacks standing to assert a [contracts] claim, as he has no contractual relationship with [Defendant]."). Nevertheless, one flaw alone does not deliver the conclusive blow to Plaintiff's case.

Plaintiff is unlikely to clear the hurdle of sovereign immunity in its claims against Defendant EPA. _See, e.g., Poirier v. Massachusetts Dep't of Correction_, 558 F.3d 92, 97 (1st Cir. 2009)("States and their agencies are entitled to sovereign immunity 'regardless of the relief sought.'")(quoting _Kentucky v. Graham_, 473 U.S. 159, 167 n. 14 (1985)). However, Plaintiff asserts it is entitled to bring suit directly against the EPA under the Administrative Protection Act ("APA") and the Citizens' Suit Provision of the Clean Water Act. A cursory reading of both statutes contradicts Plaintiff's claims.

The APA provides, in relevant part, that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to

8

act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. 5 U.S.C. §702.

The above waiver is for "'all equitable actions for specific relief against a Federal agency or officer acting in an official capacity.'" *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57–58 (1st Cir. 2007)(quoting *Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 186 (D.C.Cir.2006)).

Despite Plaintiff's veiled attempts to disguise its money claims as prayers for injunctive relief, it looks as if Plaintiff's suit is for nothing more than monetary relief and, thus, Plaintiff has other available remedies. *See* 5. U.S.C. §704 (Adding additional requirement to waiver of sovereign immunity that there be no adequate alternative remedy at law available).   Review of the citizens' suit provision of the Clean Water Act , 33 U.S.C. § 1251 *et seq.*, renders the same result as Plaintiff has purportedly failed to abide by the mandatory notice requirement which requires dismissal of a suit brought under the Act. *See Paolino v. JF Realty, LLC*, 710 F.3d 31, 33–34 (1st Cir. 2013)("Failure to comply with the CWA's sixty-day notice requirement bars such an action and calls for dismissal of the suit.")(citing *Hallstrom v. Tillamook Cnty.,* 493 U.S. 20, 32–33, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989)).

Immunity also appears to shield Defendant McCarthy from suit as she is being sued for acts that seem to be within her discretion as Administrator of the EPA. Specifically, she is being accused of discriminatorily and arbitrarily halting all grants to Puerto Rico. These allegations appear unlikely to succeed as they are acts within her discretion adorned with the label of "personal capacity." *See Muirhead v. Mecham*, 427 F.3d 14, 18 (1st Cir. 2005)(When an officer of a federal agency is sued, "'if the [challenged] actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign' and come under the protective umbrella of sovereign immunity.")(internal citations omitted); *see also Redondo-Borges v. US Department of Housing and Urban Development*, 421 F.3d 1, 6 (1st Cir. 2005). Moreover, in the event she is not shielded by sovereign immunity, she may be

shielded by qualified immunity as her actions were purportedly based on legitimate concerns of mismanagement of federal funds. *See López-Erquicia v. Weyne-Roig*, 846 F.3d 480, 485 (1st Cir. 2017)("Though qualified immunity does not shield 'the plainly incompetent or those who knowingly violate the law,' . . . an official cannot 'fairly be said to 'know' that the law forbade conduct not previously identified as unlawful,'")(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In the event Plaintiff is able to circumvent the immunity issues, there are several additional hurdles to clear before Plaintiff can step up to the plate. First, the Court has strong doubts about Plaintiff's standing to sue Defendant EPA, whom Plaintiff has no contractual privity with and has no authority to order the direct disbursements of the funds owned to Plaintiff. Second, the proper court to hear Plaintiff's claims against Defendant EPA may be the Federal Court of Claims, which is the only court with jurisdiction over contractual claims and takings claims against the United States Government. *See* 28 U.S.C. § 1491.[6] Finally, Plaintiff's prayer for nonstatutory agency review may not be appropriate in this case as Plaintiff has not provided substantive support for its assertion that Defendant McCarthy's decision to withhold the grant funds was clearly contrary to the provisions of the CWA-SRF statute. *See, e.g., Rhode Island Dep't of Envt'l. Mgmt. v. United States*, 304 F.3d 31 (1st Cir. 2002).

### State Government Defendants

Plaintiff's allegations against the state defendants in its *Amended Verified Complaint* are muddled and often contradict each other. However, after a thorough analysis of the complaint, the Court understands the primary allegation against these state defendants is that their actions unconstitutionally interfered with the contract, operating agreement, and MOU of the Project; that the state defendants'

---

[6] The Court is doubtful of the merits of Plaintiff's constitutional takings claim. *See Massó-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 468 (1st Cir. 2017)(Holding that when government entities act in a contractual or proprietary capacity, actions such as contract termination or detention of property under the contract that would constitute a simple breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a government entity.).

actions were unlawful, arbitrary, and capricious[7]; and that the monies deposited in the Banco Popular accounts have been unconstitutionally "taken" from Plaintiff. *See, e.g.,* Docket No. 34. At the risk of gilding the lily, these allegations, too, appear meritless.

Plaintiff's impairment of contracts claim reflects a flawed understanding of the applicable law. First, Plaintiff's contract was only with Defendant PRASA. Thus, the merits of any contractually-related allegation against any defendant other than PRASA are questionable, at best. *See Mercado-Boneta*, 125 F.3d at 12. Moreover, the Contracts Clause does not impair a state from breaching a contract. See *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 48 (1st Cir. 2011)("The [Contracts Clause] does not bar a state from merely breaching a contract, which is the prerogative of any private party, subject to liability for the breach."). " If a state breaches a contract but does not impair the counterparty's right to recover damages for the breach, the state has not impaired the obligation of the contract." *Id. (citing Hays v. Port of Seattle,* 251 U.S. 233, 237 (1920) and *Casey v. Depetrillo,* 697 F.2d 22, 23 (1st Cir.1983)). Here, there is no evidence that any of the state defendants have acted to prohibit recovery of the monies owed. It appears more likely that these state defendants find their hands tied as a result of the dire economic situation that has befallen the island and, accordingly, their actions may be justified in light of the circumstances. Finally, in addition to potentially being justified, their actions might also be protected, albeit temporarily, by the PROMESA Automatic Stay provision. *See* Pub.L. 114–187 § 405 (Imposing an automatic stay upon "the commencement or continuation of any action or proceeding against the Government of Puerto Rico that was or could have been commenced prior to the enactment of PROMESA.").

Like its takings claim against Defendant EPA, Plaintiff's takings claim against these state defendants look to have the punch of decaffeinated coffee. First, Plaintiff has not identified the vested property interests in the funds deposited in the Banco Popular account. *See Asociacion De Subscripcion*

---

[7] These allegations are intended to show that Plaintiff is entitled to nonstatutory review of the state agencies' actions. For the reasons explained above, Plaintiff does not appear entitled to nonstatutory review of any defendant's actions as all governmental entities sued herein appear to have acted within the discretion afforded to them by law.

*Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 27–28 (1st Cir. 2007)("To make a cognizable claim of a taking in violation of the Fifth Amendment, the plaintiffs must first show that they possess a recognized property interest which may be protected by the Fifth Amendment. The plaintiffs must point to credible sources for their claimed property interest ... 'such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"); *see also Santiago Ramos v. AEE*, 834 F.3d 103, 106 (1st Cir. 2016)("An interest becomes a protected property interest when recognized by state statute or a legal contract, express or implied, between the state agency and the individual."). Nor has Plaintiff adequately briefed how the government agencies' actions "cause[d] an illegal taking of th[at] interest." *Flores Galarza* at 28 (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 974 (1st Cir.1993)). Instead, Plaintiff pleads entitlement to a portion of the funds deposited in the Banco Popular accounts solely because of its work on the Project. Moreover, this case does not become one of an unconstitutional taking merely because the unpaid monies are the result of an alleged breach of contract by a government. *See* Massó-Torrellas, 845 F.3d at 468 (Finding that what would be a simple breach of contract when a non-governmental entity is involved does not become a constitutional violation simply because the alleged breaching party is a state agency.).

### *Conclusion*

Here, questions of law belie a finding of probability of success on the merits. *See Spencer Companies, Inc. v. Armonk Indus., Inc.*, 489 F.2d 704, 706–07 (1st Cir. 1973). The Court has serious doubts about its jurisdiction over this matter, Plaintiff's standing to sue Defendants EPA, GDB, and EQB, as well as the merits of the takings, interference with contract, and deprivation of constitutional rights by public actors claims. Plaintiff's complaint is as verbose as the day is long. However, Plaintiff perilously failed to brief its allegations well and support them with the proper factual underpinnings.  As a result, Plaintiff failed to make an adequate showing of probability of success on the merits.

*Irreparable Harm*

"To demonstrate the prospect of future harm . . . a plaintiff must show more than that she has been injured. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Gonzalez-Droz*, 573 F.3d at 79 (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir.2004)). Plaintiff bears the burden of demonstrating that a denial of the requested preliminary injunctive relief will likely cause it irreparable harm. *Id.* (quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir.2004)). This irreparable harm must be likely, not merely speculative. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

Plaintiff prays the Court grants it motion because its "bonding capacity" as a contractor has been affected by the nonpayment of the Project funds. Because bonding capacity essentially determines what projects contractors can bid for and because the amount not received for a completed project counts against a contractor's bonding capacity, Plaintiff avers the denial of its request for injunctive relief would place them in irreparable harm's way. This, in turn, would place a damper on Plaintiff's reputation in the construction industry. Finally, Plaintiff warned the Court that denying its request would subject the people of Puerto Rico to continual sewage overflows as "Puerto Rico's beaches will continue to be fouled and polluted by sanitary sewer system overflows and closed to the public, and tourists, in the height of this tourist season . . . [and] communities will continue to suffer the invasion of sewage in heavy rains, and the quality of the water and sanitary sewer systems in Puerto Rico will continue to decline." Docket No. 39 at 35.

This is a compelling case for irreparable harm. Nevertheless, these are all past injuries and there appears to be no legitimate threat of future harm. *See Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Massachusetts*, 649 F.2d 71, 74 (1st Cir. 1981)(Holding that a preliminary injunction shall not be issued simply to prevent a mere possibility of

injury. A presently existing, actual threat must be shown.). Unfortunately, the damage here is done. Plaintiff's reputational concerns are speculative, at best. The same can be said for its claims of sewage spilling over into the island's beaches and streets.

On the other hand, Plaintiff's bonding capacity will not worsen significantly with the passage of time as the balance allegedly owed by Defendants to Plaintiff for the Project will not increase with time. *See Braintree Labs.*, 622 F.3d at 41 ("[A] need for liquidity is not irreparable harm because plaintiffs offer no evidence that [Defendants] cannot pay damages and thus provide an adequate remedy at law."). Moreover, this is a case of dollars and cents more so than anything else. Courts have been reluctant to find irreparable harm when said harm is almost purely economic. *See DeNovellis v. Shalala*, 135 F.3d 58 (1st Cir. 1998)(Temporary loss of income which may be recovered later does not usually constitute irreparable injury, for purposes of determining whether injunction should issue.); *but see Micro Signal Research, Inc. v. Otus*, 417 F.3d 28 (1st Cir. 2005)(District Courts may grant a preliminary injunction in a breach of contract case when there is a strong indication that defendant would dissipate or conceal assets.). Even if the Court is to assume, *arguendo*, that Plaintiff's procedural due process rights have been violated, this too is insufficient to find irreparable harm. *See Gonzalez-Droz*, 573 F.3d at 81 n.7 ("'The alleged denial of procedural due process, without more, does not automatically trigger' a finding of irreparable harm.")(internal citations omitted).

Finally, and although Plaintiff has not directly stated it, the implicit concern that government defendants will tamper with the deposited funds or misuse them is insufficient to hold Plaintiff's irreparable harm argument above water. The funds have been deposited in the accounts since approximately October of 2015 and have yet to be moved or tampered with and doing so would subject the culprits to penalties at law and at equity. *See Matos ex rel. Matos v. Clinton School Dist.*, 367 F.3d 68, 73 (1st Cir. 2004)(No irreparable harm found to justify a preliminary injunction prohibiting a defendant from tampering with evidence when the defendant had the evidence in its possession for 14 months without a court order

prohibiting tampering and tampering with the hard drive would have left the school open to a charge of spoliation of evidence.). In closing, the Court adds that Plaintiff's arguments in favor of irreparable harm are severely debilitated by the delay in bringing suit. Plaintiff argues that it was in constant communication with Defendants in order to resolve this matter without judicial interference. Nevertheless, if the harm was as severe as Plaintiff now argues, then Plaintiff may have acted unreasonably in delaying the filing of the instant suit. *See Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, 20 (1stCir. 2012)(Noting that the doctrine of laches is "generally accepted whether asserted as a defense to an injunction or damages . . .").

### *Balance of Equities*

Generally, injunctions that order a party to carry out a particular action are disfavored as "preliminary injunctions are [typically] permissible only 'to preserve the *status quo*.'" *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 40–41 (1st Cir. 2010). These injunctions, referred to as "mandatory injunctions," alter the state of affairs and require the non-moving party to act. *Id*.  However, although it is sometimes essential "to require defendant to disturb the *status quo* by undoing acts completed before the injunction issues, or by acting affirmatively, in order to preserve the power of the court to render a meaningful decision . . . there has been great judicial hesitancy in granting preliminary relief when it is necessary to force defendant to act solely to protect the court's power to render a meaningful decision for either party and the decision would disturb the *status quo*." 11A Wright, Miller, and Kane, Fed. Prac. & Proc. § 2948 (2016); *but see Cohen v. Brown Univ.*, 991 F.2d 888, 906 (1st Cir. 1993)("the district court has broad discretionary power to take provisional steps restoring the status quo pending the conclusion of a trial.")(internal citations omitted). Plaintiff here is seeking a mandatory injunction. Defendants posit that altering the *status quo* is inappropriate and overly burdensome.

"Two factors that frequently are considered when balancing the hardship on the respective parties of the grant or denial of relief are whether a preliminary injunction would give plaintiff all or most of the relief

to which plaintiff would be entitled if successful at trial and whether mandatory relief is being sought." 11 Wright, Miller, & Kane, Fed. Prac. & Proc. § 2948.2 (2016). Here, both inquiries are answered in the affirmative. Depositing the funds in the Las Vegas and Banco Popular accounts with the Clerk of the Court would essentially make discovery and trial a formality as it would force Defendant EPA to act contrary to their statutory discretion to withhold funds from noncompliant states. Moreover, it would force state defendants to act in what may be contrary to several pieces of legislation regulating the disbursement of government funds. *See Braintree Labs.*, at 41 (Mandatory injunctions "normally should be granted only in those circumstances when the exigencies of the situation demand such relief.").

### *Impact on the Public Interest*

The public interest seems to be equally served by a grant or a denial of the motion. On one hand, Plaintiff's request is valid and has the ultimate result of penalizing agencies who have been mismanaging federal funds. This mismanagement placed the federal government in the uncomfortable position of withholding further grants. On the other hand, to grant the request supports the notion that government agencies are to be the ultimate guarantors of all contractual obligations undertaken by its sister agencies or agencies to which they provide funding. Both positions are valid. Thus, analysis of this fourth and final prong yields a virtual deadlock.

### IV.    CONCLUSION

"[A]s first-year law students quickly learn, the enforcement of contracts by injunction is the exception rather than the rule." *Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 61 (1st Cir. 1998). This case does not bring us to act on the exception. Upon weighing the four factors governing preliminary injunctive relief, the Court finds that Plaintiff has failed to show a likelihood of success on the merits, irreparable harm, and undue hardship posed by a denial of the motion. Although Plaintiff is in an admittedly unfortunate position of being owed money by a government that is fiscally insolvent, the Court may not overstep its discretion and order a mandatory injunction when Plaintiff has alternative remedies

available at law. Accordingly, Plaintiff's *Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Mandamus* (Docket No. 4) is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of March, 2017.

/s/ Daniel R. Dominguez
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE